THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* THEODORE GIMZA, Defendant-Appellee.

First District (4th Division)    No. 77-328

Opinion filed December 29, 1977.—Rehearing denied January 19, 1978.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Timothy Quinn, Mary C. Shropshire, and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Lawrence J. Suffredin, Jr., of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The issue in this case is whether the 160-day period within which an accused, on bail, must be brought to trial continues to run if the charge is dismissed at the preliminary hearing for want of probable cause, and a subsequent indictment is brought based on the same facts. We hold that it does not and reverse the trial court's dismissal of the subsequent indictment on the grounds the 160-day period had run.

On July 16, 1975, Theodore Gimza, the defendant, allegedly pushed Eugene Hunsaker through a window causing his death. He was arrested that same day and charged with involuntary manslaughter. He allegedly made a demand for trial on July 17, 1975, before he was released on bond and again on July 30, 1975. Because of the conclusion we reach, we need

not determine if in fact a valid and effective demand was made on either of those two dates. There is no question that the defendant did, on August 13, 1975, demand trial. The preliminary hearing was held, after several continuances requested by the State, on September 9, 1975. The judge found there was no probable cause and discharged the defendant. Immediately the defendant again demanded trial. On December 30, 1975, the grand jury, after hearing evidence based on the same events, including a witness who had not appeared at the preliminary hearing, indicted Gimza for murder. He was arraigned on January 12, 1976, again released on bond and asked for a continuance. On February 19, 1976, he filed a petition for discharge, contending that the 160-day period within which the trial must be held, pursuant to section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5), had expired. The trial court granted the motion on November 5, 1976. Thereafter the defendant again demanded trial. The State has appealed.

■■■ Under Illinois law (Ill. Rev. Stat. 1975, ch. 38, par. 103—5), a defendant on bail must be brought to trial within 160 days of the date on which he demands trial unless the delay is caused by the defendant, by an interlocutory appeal or by certain other circumstances not relevant here; under the statute applicable to the defendant here, any delay attributable to him would toll the running of the term and start it anew. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b).) (Under a recently enacted amendment not applicable here because it only applies to offenses committed on or after March 1, 1977, any delay by the defendant would only suspend the running of the term for the period of the delay.) (Ill. Rev. Stat. 1976, ch. 38, par. 103—5(f).) It is uniformly recognized by Illinois law, that as provided by statute, the period does not run for a defendant not in custody, until a demand is made. (*Village v. Midlothian v. Walling* (1969), 118 Ill. App. 2d 358, 255 N.E.2d 23; *People v. O'Shea* (1975), 26 Ill. App. 3d 826, 326 N.E.2d 230.) The only demand made by the defendant after he was indicted for murder on December 30, 1975, occurred after his discharge on November 5, 1976. Accordingly, it is obvious that we can only affirm the trial court's ruling if we find (1) that a demand was made on either July 17, 1975, or July 30, 1975, since any subsequent date was less than 160 days before January 12, 1976, the day on which the defendant asked for a continuance and (2) that the period continued to run after the defendant's discharge on September 9, 1975. Since we conclude that the period did not continue to run, but that a totally new period began to run only after a proper demand was made after the indictment on December 30, 1975, we need not determine whether a proper demand was made in July 1975.

■■■ The defendant has contended that since the 160-day period (or 120-day period if the defendant is in custody) continues to run if the State

nolle prosses the case (*People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 469; *People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242), or has the charge stricken with leave to reinstate (*People v. Baskin* (1967), 38 Ill. 2d 141, 230 N.E.2d 208), it should be found to continue to run when the charge is dismissed at preliminary hearing for lack of probable cause. First we note as the Illinois Supreme Court has pointed out in *People v. McAdrian* (1972), 52 Ill. 2d 250, 255, 287 N.E.2d 688, 691:

> "We have held that the 120-day rule implements a constitutional right to a speedy trial and that its purpose should not be avoided by technical evasions, such as by dismissing and refiling the same charge. (*People v. Fosdick* (1967), *36 Ill. 2d 524, 528.*) Under certain circumstances, this court has held that the statutory term began to run on the date of a subsequent commitment after the earlier identical charge had been dismissed for want of prosecution. See *People v. Lindner (1914), 262 Ill. 223, 227.*
>
> *This suggests that the real issue, when a charge against a defendant is dismissed and he is later re-indicted on the same offense, may be whether the circumstances suggest that the State is seeking to evade the consequences of the 120-day rule, or whether the delay, in any event, would constitute a denial of the defendant's constitutional right to a speedy trial.*" (Emphasis added.)

There was no evidence in this case that the State deliberately withheld any evidence or otherwise acted in bad faith at the preliminary hearing so as to obtain the dismissal for want of probable cause. (Compare *People v. Hamby* (1963), 27 Ill. 2d 493, 190 N.E.2d 289, *cert. denied sub nom. Hamby v. Pate* (1963), 372 U.S. 980, 10 L. Ed. 2d 145, 83 S. Ct. 1116, *cert. denied.* (1963), 375 U.S. 857, 11 L. Ed. 2d 84, 84 S. Ct. 120 where the court rejected defendant's contention that the period of delay caused by his motion to quash the indictments should not be attributed to him because of the State's failure to present properly drawn indictments.) Furthermore, contrary to the implication in the defendant's contention, a discharge for want of probable cause with a subsequent indictment is clearly distinguishable from a nolle prosse or a motion to strike the charge with leave to reinstate. A nolle prosse or a motion to strike the charge with leave to reinstate is made by the State, is within the State's control and presumably is made on behalf of the State. But a discharge for want of probable cause is not an act within the State's control. Following this discharge, additional evidence was presented to the grand jury from a witness who did not testify at the preliminary hearing, and the grand jury returned an indictment not for involuntary manslaughter but for murder. (Compare *People v. Wildey* (1967), 86 Ill. App. 2d 274, 229 N.E.2d 882.) Under such circumstances there is no reason for us to ignore the

requirement of the statute that it only runs when a charge is pending against the defendant. (*People v. Lowe* (1965), 61 Ill. App. 2d 262, 210 N.E.2d 31.) Therefore, there has been no showing of such evasion or attempted evasion of the statute by the State as to require the continued running of the statute after the discharge of the defendant.

■■   Furthermore, the constitutional bases for the speedy trial rule do not support such a requirement. As was stated by the United States Supreme Court in *United States v. Marion* (1971), 404 U.S. 307, 320-23, 30 L. Ed. 2d 468, 478-80, 92 S. Ct. 455, 463-65:

"It is apparent also that very little support for appellees' position emerges from a consideration of the purposes of the Sixth Amendment's speedy trial provision, a guarantee that this Court has termed 'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.' *United States v. Ewell*, 383 U.S. 116, 120 (1966); see also *Klopfer v. North Carolina*, 386 U.S. 213, 221-226 (1967); *Dickey v. Florida*, 398 U.S. 30, 37-38 (1970). Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in *Klopfer v. North Carolina, supra*; see also *Smith v. Hooey*, 393 U.S. 374, 377-78 (1969). So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusations: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may

impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

\* \* \*

\* \* \* There is \* \* \* no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function."

As with the defendant who has not yet been arrested, so too one who has been discharged "suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of the defendant who has been arrested and held to answer." The only prejudice which he might suffer by the delay is that which the United States Supreme Court felt in *Marion* was insufficient to invoke the protections of the Sixth Amendment.

For the foregoing reasons, we conclude that the statutory period did not continue to run after September 9, 1975, when the original charge against the defendant was dismissed for want of probable cause. Accordingly, the judgment of the trial court is reversed and the case remanded for trial. Since trial has been demanded, trial must be brought within 160 days after our mandate is filed in the trial court (see *People v. Baskin* (1967), 38 Ill. 2d 141, 230 N.E.2d 208), unless further delay is caused by the defendant.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.